# In the United States Court of Appeals for the Fifth Circuit

**No. 25-30671**

DEVIN BARRIOS,
*Plaintiff,*

XL SPECIALTY INSURANCE COMPANY,
*Intervenor Plaintiff — Appellant,*

*v.*

CENTAUR, L.L.C.
*Defendant—Intervenor Defendant –Appellee,*

*v.*

RIVER VENTURES, L.L.C.,
*Defendant—Appellant*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

**BRIEF OF XL SPECIALTY INSURANCE COMPANY, INTERVENOR PLAINTIFF - APPELLANT, AND RIVER VENTURES, L.L.C., DEFENDANT - APPELLANT**

Kenneth G. Engerrand
Lead Attorney
BROWN SIMS, P.C.
1990 Post Oak Blvd. Suite 1800
Houston, Texas 77056
Telephone: 713.629.1580
kengerrand@brownsims.com

Thear J. Lemoine
Taylor R. Lambert
Jackson O. Scott
BROWN SIMS, P.C.
365 Canal Street, Suite 2900
New Orleans, LA 70130
Telephone: 504.569.1007
tlemoine@brownsims.com
tlambert@brownsims.com
jscott@brownsims.com

*Attorneys for XL Specialty Insurance Company, Intervenor Plaintiff-Appellant*

Jefferson Randolph Tillery
Lead Attorney
Jones Walker, L.L.P.
201 Saint Charles Avenue
Suite 4700
New Orleans, LA 70170-5100
Telephone: 504-582-8616
jtillery@joneswalker.com

Justin J. Marocco
Jones Walker, L.L.P.
445 North Boulevard
Suite 800
Baton Rouge, LA 7082-5747
Telephone: 225-248-2415
jmarocco@joneswalker.com

*Attorneys for River Ventures, L.L.C.,*
*Defendant-Appellant*

# In the United States Court of Appeals for the Fifth Circuit

**No. 25-30671**

DEVIN BARRIOS,
*Plaintiff,*

XL SPECIALTY INSURANCE COMPANY,
*Intervenor Plaintiff — Appellant,*

*v.*

CENTAUR, L.L.C.
*Defendant — Intervenor Defendant –Appellee,*

*v.*

RIVER VENTURES, L.L.C.,
*Defendant—Appellant*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rule 28.2.1, undersigned counsel of record for Intervenor Plaintiff-Appellant XL Specialty Insurance Company and Defendant-Appellant River Ventures, L.L.C. certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. XL Specialty Insurance Company, Intervenor Plaintiff - Appellant.

2. River Ventures, L.L.C., Defendant - Appellant.

3. Centaur, L.L.C., Defendant/Intervenor Defendant - Appellee.

4. Kenneth G. Engerrand, Thear J. Lemoine, Taylor R. Lambert, Jackson O. Scott, Brown Sims, P.C., counsel for XL Specialty Insurance Company.

5. Jefferson Randolph Tillery, Justin J. Marocco, Jones Walker LLP, Counsel for River Ventures, L.L.C.

6. Bradley Joseph Schlotterer, Sean T. McLaughlin, Kean Miller, L.L.P., counsel for Centaur, L.L.C.

/s/ Kenneth G. Engerrand
Kenneth G. Engerrand

*ATTORNEY FOR INTERVENOR PLAINTIFF - APPELLANT,*
*XL SPECIALTY INSURANCE COMPANY*

/s/Jefferson R. Tillery
Jefferson Randolph Tillery

*ATTORNEY FOR DEFENDANT-APPELLANT RIVER VENTURES, L.L.C.*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents recurring and consequential questions of maritime contract and insurance law governing marine operations. Specifically, the appeal concerns the proper application of unambiguous contractual insurance-procurement obligations, the interaction between a Protection and Indemnity ("P&I") policy's vessel-scheduling provisions and additional-insured endorsements, and the legal consequences of an already judicially determined failure to comply with a contractual obligation to procure a P&I policy that provides coverage for crew/employee injuries.

The district court's ruling, that casts aside the contracting parties' intent, if allowed to stand, would materially alter settled expectations in the marine industry by permitting bargained-for risk transfer to be nullified through an overly formulaic focus on vessel scheduling, contrary to the express language in the P&I Policy and in the Master Service Contract ("MSC") requiring Centaur, L.L.C. ("Centaur") to provide insurance in favor of River Ventures, L.L.C. ("River Ventures") for injuries to employees of Centaur.

The district court's reasoning cannot be reconciled with this Court's prior holding that 1) the MSC is clear and unambiguous and must be enforced as written, and 2) the MSC's insurance-procurement scheme was

designed to mirror its knock-for-knock contractual indemnity obligations. Under this risk transfer structure, Centaur agreed to contractually indemnify River Ventures, its vessels, and XL Specialty Insurance Company ("XL") and to procure insurance covering them against claims arising from injuries to Centaur's employees. Centaur's failure to comply with its obligation was a breach of contract for which it should be held responsible.

The issues on appeal are questions of law, including the interpretation of a maritime contract and marine insurance policies in light of this Court's mandate and the legal consequences of a proven failure to comply with an insurance-procurement obligation. These issues extend beyond the parties to this case and implicate industry-wide reliance on P&I coverage and established insurance-procurement standards in maritime service contracts.

Because the appeal raises important legal questions concerning maritime commerce, the application of this Court's prior mandate, and the enforceability of standardized insurance-procurement arrangements, River Ventures and XL respectfully submit that oral argument would materially assist the Court.

# TABLE OF CONTENTS

Page/s

CERTIFICATE OF INTERESTED PARTIES....................i

STATEMENT REGARDING ORAL ARGUMENT....................iii

TABLE OF CONTENTS....................v

TABLE OF AUTHORITIES....................viii

JURISDICTIONAL STATEMENT....................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW....................1

STATEMENT OF THE CASE....................3

I. FACTUAL BACKGROUND....................3

A. MASTER SERVICE CONTRACT REQUIREMENTS....................4

1. Insurance Procurement Obligations....................4

2. Knock-for-Knock Contractual Indemnity....................6

B. POLICIES PROCURED....................8

C. THE PROJECT AND ACCIDENT....................9

II. PROCEDURAL HISTORY....................9

III. RULINGS PRESENTED FOR REVIEW....................16

SUMMARY OF ARGUMENT....................18

ARGUMENT....................20

I. STANDARD OF REVIEW....................20

II. INTRODUCTION....................21

**TABLE OF CONTENTS** *Continued~*


Page/s

III. COVERAGE UNDER THE TRAVELERS P&I POLICY .......................... 23

A. THE TRAVELERS P&I POLICY'S INSURING AGREEMENT EXTENDS OWNER LIABILITY COVERAGE TO "THE VESSEL NAMED HEREIN" .......................... 23

B. THE M/V TROOPER WAS "NAMED" ON THE TRAVELERS P&I POLICY .......................... 24

C. LOUISIANA RULES OF CONTRACT INTERPRETATION REQUIRE GIVING "NAMED HEREIN" ITS PLAIN MEANING, WHICH INCLUDES VESSELS NAMED BY ENDORSEMENT .......................... 26

D. CENTAUR PAID A PREMIUM TO NAME RIVER VENTURES, THE M/V TROOPER, AND XL ON THE TRAVELERS P&I POLICY .......................... 29

E. THE DISTRICT COURT ERRED IN ACCEPTING CENTAUR'S SCHEDULING THEORY .......................... 30

1. The "Specific Additional Insured" Endorsement Should Be Given Operative Effect .......................... 31

2. Centaur's Argument and the District Court's Decision Fail to Consider All Provisions of the Policy .......................... 32

3. Cases Cited by Centaur and the District Court Are Inapposite to the Interpretation of the MSC .......................... 36

4. The District Court's Decision Renders Coverage Illusory for the Additional Insureds .......................... 39

IV. ALTERNATIVELY, CENTAUR BREACHED ITS OBLIGATION TO PROCURE A P&I POLICY THAT COMPLIED WITH THE MSC'S INSURANCE SPECIFICATIONS .......................... 42

**TABLE OF CONTENTS** *Continued~*

Page/s

A. THE MSC REQUIRED SP-23–EQUIVALENT P&I COVERAGE AND THE NAMING OF THE ENTIRE UBT GROUP, INCLUDING "ANY AND ALL VESSELS OWNED" BY ITS MEMBERS....42

B. CENTAUR WAS REQUIRED TO PROCURE A P&I INSURANCE POLICY WITH COVERAGE THAT WOULD "MIRROR" THE SCOPE OF THE CONTRACTUAL INDEMNITY REQUIREMENTS....43

C. THE BREACH DIRECTLY CAUSED THE LOSS....47

V. COVERAGE UNDER THE P&I POLICY ESTABLISHES COVERAGE UNDER THE BUMBERSHOOT POLICY....50

CONCLUSION....51

CERTIFICATE OF SERVICE....53

CERTIFICATE OF COMPLIANCE....54

# TABLE OF AUTHORITIES

Page/s

*Armijo v. Tetra Techs., Inc.*,
936 F. Supp. 2d 675 (E.D. La. 2013), *appeal dismissed sub nom. Tetra Techs., Inc. v. Cont'l Ins. Co.*, 755 F.3d 222 (5th Cir. 2014) .......... 41

*Borden v. Allstate Ins. Co.*,
589 F.3d 168 (5th Cir. 2009) .......... 20,21

*Boullt v. State Farm Mut. Auto. Ins. Co.*,
99-0942 (La. 10/19/99), 752 So. 2d 739 .......... 40

*Cadwallader v. Allstate Ins. Co.*,
2002-1637 (La. 6/27/03), 848 So. 2d 577 .......... 27,28

*Deutsche Bank Nat'l Trust Co. v. Burke*,
902 F.3d 548 (5th Cir. 2018) .......... 21

*Gabarick v. Laurin Mar. (Am.) Inc.*,
650 F.3d 545 (5th Cir. 2011) .......... 21,26

*Ham Marine, Inc. v. Dresser Indus., Inc.*,
72 F.3d 454 (5th Cir. 1995) .......... 21

*Int'l Offshore Servs., L.L.C. v. Linear Controls Operating, Inc.*, 647 F. App'x 327 (5th Cir. 2016) .......... 33,34

*Lanasse v. Travelers Ins. Co.*,
450 F.2d 580 (5th Cir. 1971) .......... 23,35

*Landry v. Oceanic Contractors, Inc.*,
731 F.2d 299 (5th Cir. 1984) .......... 48,49

*LeBlanc v. Global Drilling Co.*,
193 F.3d 873 (5th Cir. 1999) .......... 44,45,47

**TABLE OF AUTHORITIES** *Continued~*

Page/s

*Mid-Continent Cas. Co. v. Bay Rock Operating Co.*,
614 F.3d 105 (5th Cir. 2010)....................18,32,39

*New Orleans Opera Ass'n, Inc. v. S. Reg'l Opera Endowment Fund*, 2007-1373 (La. App. 4th Cir. 8/27/08), 993 So. 2d 791, *writ denied*, 2008-2352 (La. 11/21/08), 996 So. 2d 1114....................48

*Ogea v. Loffland Bros. Co.*,
622 F.2d 186 (5th Cir. 1980)....................15,17,20,46

*Petrozziello v. Thermadyne Holdings Corp.*,
2015-1525 (La. App. 1st Cir. 2/17/17), 211 So. 3d 1199, *writ denied*, 2017-0473 (La. 5/12/17), 219 So. 3d 1104....................40

*Rider v. Ambeau*,
2011-0532 (La. App. 1st Cir. 2/1/12) 100 So. 3d 849....................40

*St. Paul Ins. Co. v. Texas Dept. of Transp.*,
999 S.W.2d 881 (Tex. App.--Austin 1999, pet. denied)....................41

*Stewart v. Cran-Vela Rental Co.*,
510 F.2d 982 (5th Cir. 1975)....................47,49

*Texas E. Transmission Corp. v. McMoran Offshore Expl. Co.*, 877 F.2d 1214 (5th Cir. 1989)....................17,36,37

*Tullier v. Halliburton Geophysical Servs.*,
81 F.3d 552 (5th Cir. 1996)....................14,15,17,20,22,46

*United States v. Johnson*,
14 F.4th 342 (5th Cir. 2021)....................21

**TABLE OF AUTHORITIES** *Continued~*


Page/s

*Voisin v. O.D.E.C.O. Drilling Co.*,
744 F.2d 1174 (5th Cir. 1984)....................47,49

*Zeitoun v. Orleans Parish Sch. Bd.*,
2009-1130 (La. App. 4th Cir. 3/3/10),
33 So. 3d 361, *writ denied*, 2010-0752
(La. 6/4/10), 38 So. 3d 303....................18,31,32

**FEDERAL STATUTES**

33 U.S.C. § 905(b)....................9,10,44

46 U.S.C. § 30104....................9

**LOUISIANA STATUTES**

La. Civ. Code art. 1978....................48

La. Civ. Code art. 1979....................48

La. Civ. Code art. 2045....................27

La. Civ. Code art. 2046....................27

La. Civ. Code art. 2049....................27

La. Civ. Code art. 2050....................27

La. Civ. Code art. 2056....................27,28

La. R.S. § 22:855A....................30

## JURISDICTIONAL STATEMENT

This Court has previously heard three appeals in this matter. *Barrios v. Centaur, L.L.C.*, 942 F.3d 670 (5th Cir. 2019); *Barrios v. River Ventures, L.L.C.*, No. 21-30431, 2022 U.S. App. LEXIS 9148, 2022 WL 1013848 (5th Cir. Apr. 5, 2022); *Barrios v. Centaur, L.L.C.*, 121 F.4th 515 (5th Cir. 2024), *reh'g denied*, 2024 U.S. App. LEXIS 29170 (5th Cir. Dec. 16, 2024). The suit was brought in admiralty by an injured maritime worker and includes the related interpretation of a maritime contract. The district court had admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1). The district court entered its Order and Reasons on October 23, 2025, ROA.4401-ROA.4413, R.E. Tab 3,[1] and its Judgment in favor of Centaur on October 24, 2025. ROA.4414, R.E. Tab 4. River Ventures and XL timely filed their Notice of Appeal on November 14, 2025. ROA.4415-ROA.4416, R.E. Tab 2. This Court has appellate jurisdiction under 28 U.S.C. § 1291, because the appeal arises from a final judgment rendered by the United States District Court for the Eastern District of Louisiana.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal concerns whether the district court, on remand from the third appeal to this Court, correctly applied this Court's prior mandate and

[1] Parallel references to the Record Excerpts are cited as R.E. Tab __.

applicable law in adjudicating River Ventures and XL's claims arising from Centaur's material breach of the insurance-procurement provisions of a Master Service Contract with United Bulk Terminal Davant, L.L.C. ("UBT"). The MSC required Centaur to procure protection and indemnity and excess liability insurance policies for UBT and its contractors (including River Ventures), their vessels, and insurers (collectively, "UBT Group"), consistent with standardized maritime risk-allocation principles and the MSC's knock-for-knock indemnity framework. This Court previously held that the "MSC unambiguously obligated Centaur to procure a P&I policy that provided coverage for crew/employee personal injuries." *Barrios*, 121 F.4th at 519; ROA.4358, R.E. Tab. 5.

On remand, the district court held that Centaur did not cause any damage to River Ventures or XL for procuring P&I and excess coverage with a crew/employees exclusion, in violation of the MSC, stating that "the Centaur P&I Policy would not have provided coverage to River Ventures as owner of the M/V TROOPER because the M/V TROOPER was not a scheduled vessel and that Centaur had no obligation to add the M/V TROOPER to the schedule of vessels in the Centaur P&I Policy or otherwise obtain a policy that provided coverage." ROA.4412.

This appeal presents two issues for this Court's review:

1. Whether, under the Travelers P&I Policy, the insuring agreement's coverage for River Ventures as owner of the "vessel named herein" affords coverage to River Ventures for vessels named as insureds under the Policy by a Specific Additional Insured endorsement or is limited only to a vessel listed on the Policy's Schedule of Vessels?

2. Alternatively, whether Centaur breached its obligation under the MSC to procure P&I and following excess insurance by obtaining a P&I policy that affords no coverage to the named additional insureds.

## STATEMENT OF THE CASE

The current appeal turns this Court's attention, once again, to the risk-transfer obligations of the MSC, and the insurance provided thereunder, relating to an injury to Centaur's employee during a marine construction project.

### I.
### FACTUAL BACKGROUND

The facts underlying the contractual dispute were succinctly set forth by this Court in the last appeal:

> In 2015, Centaur entered into a Master Services Contract ("MSC") with United Bulk Terminals Davant, L.L.C. ("UBT"). Centaur is an employer of construction workers and UBT is an owner of a dock facility on the Mississippi River. As a task under the MSC, UBT hired Centaur to build a concrete containment wall around the edge of a dock at its facility. River Ventures, an owner and operator of crew boats, provided vessel transportation for Centaur's employees who worked on the dock project. Centaur employee Devin Barrios injured himself while transferring a generator from a River Ventures vessel onto

> a barge leased by Centaur. Litigation ensured, and the district court found River Ventures 100% at fault for the accident and imposed a $3.3 million judgment after a bench trial. River Ventures/XL satisfied the judgment and brought claims against Centaur under the MSC for breach of contract as third-party beneficiaries.

*Barrios*, 121 F.4th at 517; ROA.4353, R.E. Tab 5 (footnote omitted).

## A. Master Service Contract Requirements

### 1. Insurance Procurement Obligations

The MSC between Centaur and UBT established a comprehensive risk-allocation apportionment that required Centaur to manage the risk of employee injuries through insurance coverages and reciprocal indemnity obligations. ROA.2874-ROA.2876, R.E. Tab 13.

Section 5.0 of the MSC required Centaur to obtain multiple lines of insurance, including the following:

1. A Workers Compensation/Employers Liability policy with a $1,000,000 limit, including a borrowed servant or alternate employee endorsement naming UBT as the alternate employer and a maritime employer's liability endorsement.

2. A primary Protection and Indemnity policy "subject to the terms and conditions of not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent" with a limit of $1,000,000.

3. A Comprehensive General Liability policy, including contractual liability coverage applicable to all liability, indemnity, and hold harmless provisions assumed under the MSC with a minimum limit of $1,000,000.

> 4. An Excess Umbrella Liability policy "following form with the underlying coverages" with limits of liability of no less than $10,000,000.

ROA.2874-2875, R.E. Tab 13.

Section 5.0 further obligates Centaur, as a contractor of UBT, to name the "UBT Group" as additional insureds on all of the required policies except the workers' compensation and hull policies: "Contractor [Centaur] shall, but only to the extent of the liabilities assumed by Contractor in this Agreement, obtain from each of its insurers a waiver of subrogation in favor of each of the 'UBT Group' (defined below) and, with the exception of Workers' Compensation Coverage . . . , **name each of the UBT Group as additional insureds** in each insurance policy as set forth above, but only to the extent of the liabilities assumed by Contractor in this Agreement. . . . Contractor shall ensure that any endorsement naming the UBT Group as additional insureds **shall not exclude from coverage the sole negligence of the additional insureds**." ROA.2875, R.E. Tab 13 (emphasis added). The MSC unambiguously provides in Section 6.0 that River Ventures, its vessel, M/V TROOPER, and River Ventures' insurer, XL, are all members of the UBT Group, defining the UBT Group as:

> UBT and UBT's other contractors and subcontractors of any tier and invitees for each of the foregoing, and the respective parents, subsidiaries, affiliates, joint ventures of same, and each of their respective officers, directors,

> managers, employees, consultants, agents and representatives, **and any and all vessels owned, chartered, hired, managed or operated by any of the foregoing, and the insurers of each of the foregoing**.

ROA.2876, R.E. Tab 13 (emphasis added).[2]

At trial, Centaur's insurance brokering expert, Kenneth Domilise, testified that that insurance program should provide coverage "coextensive" with the parties' contractual indemnity obligations. ROA.6248. In the third appeal, this Court explained that the MSA's insurance requirements were "designed to mirror" the parties' contractual indemnity obligations. *Barrios*, 121 F.4th at 517, ROA.4353, R.E. Tab 5.

**2. Knock-for-Knock Contractual Indemnity**

Section 6.0 of the MSC sets forth broad contractual defense and indemnity obligations running from Centaur to the UBT Group for claims arising from injuries to Centaur employees:

> 6.0 **Indemnification.** CONTRACTOR SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD UBT GROUP (DEFINED AS UBT AND UBT'S OTHER CONTRACTORS AND SUBCONTRACTORS OF ANY TIER AND INVITEES FOR EACH OF THE FOREGOING, AND THE RESPECTIVE PARENTS, SUBSIDIARIES, AFFILIATES, JOINT VENTURES OF SAME, AND EACH OF THEIR RESPECTIVE OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES, CONSULTANTS, AGENTS AND REPRESENTATIVES, AND ANY AND ALL VESSELS OWNED,

[2] This Court stated in the last appeal: "The parties do not dispute that River Ventures/XL are proper third-party beneficiaries of the MSC." *Barrios*, 121 F.4th at 517 n.1.; ROA.4353, R.E. Tab 5. The district court added: "It is undisputed that River Ventures and the M/V TROOPER are Assureds under the Policy." ROA.4407, R.E. Tab 3.

> CHARTERED, HIRED, MANAGED OR OPERATED BY ANY OF THE FOREGOING, AND THE INSURERS OF EACH OF THE FOREGOING) HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS . . . BROUGHT BY ANY PERSON . . . IN RESPECT OF PERSONAL OR BODILY INJURY . . . OF . . . ANY MEMBER OF CONTRACTOR GROUP. . . , *REGARDLESS OF CAUSE OR FAULT*, AND EVEN IF CAUSED IN WHOLE OR IN PART BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OR FAULT OF ANY MEMBER OF THE UBT GROUP OR THE UNSEAWORTHINESS OF ANY VESSELS OWNED, OPERATED OR OTHERWISE UNDER THE CONTROL OF ANY MEMBER OF UBT GROUP.

ROA.2876, R.E. Tab 13 (emphasis in original).

The MSC also contains a reciprocal provision requiring UBT to indemnify Centaur for injuries to employees of the UBT Group. ROA.2876, R.E. Tab 13. At trial, Centaur's expert, Kenneth Domilise, testified that these reciprocal indemnity provisions were intended to create a knock-for-knock indemnity regime, under which each party bore responsibility for injuries to its own employees, regardless of fault. ROA.6252-ROA.6253. Notably, Section 6.0 extends indemnity to all River Ventures' vessels without limitation to any schedule. ROA.2876, R.E. Tab 13.

Thus, Sections 5 and 6 of the MSC work together so that Centaur indemnifies the UBT Group (including River Ventures, the TROOPER, and XL) for injuries sustained by Centaur employees (such as Barrios), and Centaur agrees to insure the UBT Group (including River Ventures, the

TROOPER, and XL) to the extent of the liabilities assumed by Centaur (including the injury to Barrios).

**B. POLICIES PROCURED**

In response to the insurance requirements in Section 5.0 of the MSC, Centaur procured from Travelers Property Casualty Company of America ("Travelers") a Protection & Indemnity Policy (Policy No. ZOH-15R75542-16-ND), a Marine General Liability Policy (Policy No. ZOL-15R75530-16-ND), and a Bumbershoot Liabilities Policy (Policy No. ZOB-15R75566-16-ND). ROA.1950-ROA.2161. Centaur also procured a Workers Compensation and Employers Liability Insurance Policy (Policy No. SVWCLA2461472016) from Silver Oak Casualty, Inc., a Travelers-affiliated company. ROA.2445-ROA.2490.

The Travelers P&I Policy incorporated the required SP-23 form, which provides coverage for liabilities of the Assured "as owners of the vessel named herein." ROA.1988, R.E. Tab 13. Relative to the MSC's requirement that the "UBT Group" be named as additional insureds, the Travelers P&I Policy included a "Specific Additional Insured" endorsement expressly naming UBT, its contractors and subcontractors, their vessels, and their insurers (including River Ventures, the M/V TROOPER, and XL) as additional insureds. ROA.1969, R.E. Tab 13. The Travelers Bumbershoot

Policy was issued as excess, follow-form coverage over the underlying P&I Policy. ROA.2115, ROA.2125, ROA.2132.

### C. THE PROJECT AND ACCIDENT

Pursuant to the MSC, Centaur performed construction work at UBT's facility in Davant, Louisiana, including the installation of a concrete containment rail on the dock. ROA.1601, R.E. Tab 11. In connection with that work, Centaur chartered a crane barge and utilized a River Ventures crew boat, the M/V TROOPER, to transport Centaur employees and equipment between the shore and the work site on the Mississippi River. ROA.1601-ROA.1602, R.E. Tab 11. Devin Barrios was employed by Centaur as a member of its crew on the project. ROA.1601, R.E. Tab 11.

On the morning of January 25, 2016, Barrios was injured while transferring from the M/V TROOPER to a barge chartered by Centaur at the UBT facility. ROA.1602, R.E. Tab 11. He was retrieved from the water and received medical treatment for his injuries. ROA.1602, ROA.1605, R.E. Tab 11.

## II.
## PROCEDURAL HISTORY

Barrios filed suit against Centaur and River Ventures on January 24, 2017, asserting negligence claims under the Jones Act, 46 U.S.C. § 30104, and Section 5(b) of the Longshore and Harbor Workers' Compensation Act,

33 U.S.C. § 905(b). ROA.39. River Ventures thereafter sought defense, indemnity, and insurance coverage from Centaur and Travelers pursuant to the MSC and the responsive policies. ROA.176-ROA.177; ROA.217-ROA.220.

The district court initially granted summary judgment to Centaur on River Ventures' claims, holding that Louisiana law governed the MSC and that the Louisiana Construction Anti-Indemnity Statute voided the MSC's indemnity and insurance provisions. ROA.1311-ROA.1322. River Ventures appealed. This Court reversed, holding that the MSC is a maritime contract and that the Louisiana Construction Anti-Indemnity Statute did not apply to the indemnity and insurance provisions. *Barrios*, 942 F.3d at 682; ROA.1646, R.E. Tab 10.

The district court conducted a bench trial on Barrios's claims, ROA.1585, and on February 5, 2019, the court entered judgment in favor of Barrios and against River Ventures, finding that Barrios was not a seaman and holding River Ventures solely liable on his Section 5(b) negligence claim, with a judgment in the amount of $3,308,094.55. ROA.1600-ROA.1615, R.E. Tab 11. River Ventures' insurer, XL, paid the judgment. ROA.4283, R.E. Tab 6.

Following entry of judgment, River Ventures and XL advanced their claims for additional-insured status and coverage from Centaur's insurer,

Travelers, and a breach of contract claim against Centaur for failure to procure the required insurance in the event of a lack of coverage. ROA.1883-ROA.1893. Travelers denied defense and additional-insured coverage under its P&I, Marine General Liability, and Bumbershoot Policies. ROA.1928-ROA.1949. Travelers asserted a Crew/Employee Exclusion in its P&I Policy as a basis to deny coverage to River Ventures.[3] ROA.2000, R.E. Tab 14. Travelers cited, among other reasons,[4] a "sole negligence" exclusion in the Bumbershoot Policy, as well as the follow-form nature of that Policy, to deny excess coverage. ROA.1943; ROA.2126.

Travelers and River Ventures filed cross-motions for summary judgment on the insurance coverage. On June 30, 2021, the district court granted summary judgment in favor of Travelers, holding that the Crew/Employee Exclusion in the P&I Policy barred coverage for River Ventures. ROA.3777-ROA.3787; R.E. Tab 9. As the district court found no coverage under the P&I Policy, on account of the crew/employee exclusion, it further held that there was no coverage under the Bumbershoot Policy, which applied "in excess of similar coverage" in an underlying policy.

---

[3] Travelers cited other purported reasons, including the vessel scheduling issue currently relied upon by Centaur, in order to deny coverage. ROA.3275-ROA.3295; ROA.3678-ROA.3689.

[4] *See* ROA.3275-ROA.3295; ROA.3678-ROA.3689.

ROA.3783 n.18, R.E. Tab 9. This Court affirmed that ruling. *Barrios* second appeal, 2022 U.S. App. LEXIS 9148 at *11; ROA.3798-ROA.3808, R.E. Tab 8.

In the same June 30, 2021, Order, the district court denied summary judgment on River Ventures' and XL's breach-of-contract claims against Centaur, concluding that the MSC's insurance procurement requirements were ambiguous based on Centaur's argument that a strict reading would result in duplicative coverage between the Workers Compensation/-Employers Liability policy and the P&I Policy. ROA.3786, R.E. Tab 9.

River Ventures' and XL's breach-of-contract claims against Centaur proceeded to a bench trial on November 7, 2023. ROA.4281. The district court accepted stipulated facts, admitted documentary evidence, and heard live testimony from two insurance experts: Jose Guerrero (retained by River Ventures and XL) and Kenneth Domilise (retained by Centaur). ROA.4281-ROA.4292, R.E. Tab 6.

Following trial, the district court dismissed River Ventures' and XL's claims on November 17, 2023, concluding that Centaur had not breached the MSC because "the parties did not intend to require Centaur to obtain a P&I policy that also included crew/employee liability coverage." ROA.4290-ROA.4291, R.E. Tab 6. River Ventures and XL appealed, and this Court

reversed the district court's holding that Centaur did not breach the MSC with respect to the P&I and Bumbershoot policies that Centaur procured:

> (1) "The MSC therefore unambiguously obligated Centaur to procure a P&I policy that provided coverage for crew/employee personal injuries. The district court's contrary conclusion must be reversed."
>
> (2) The district court dismissed the claim with respect to the Bumbershoot policy because it "'found no breach regarding the duty to procure the underlying P&I coverage.' Because of our disposition on the P&I breach of contract claim, we reverse and remand on the excess/bumbershoot breach of contract claim as well."

*Barrios* third appeal, 121 F.4th at 519, 520; ROA.4358, R.E. Tab 5 (internal citation and footnote omitted).

In reaching these conclusions, this Court specifically determined that "the MSC imposed several insurance procurement obligations on Centaur in connection with the dock project, which were designed to mirror the MSC's requirement that Centaur indemnify River Ventures/XL for all claims brought for personal injury of a Centaur employee regardless of cause or fault." *Id.* at 517; ROA.4353, R.E. Tab 5 (footnote omitted).

On remand, the district court addressed Centaur's defenses that were not resolved on appeal. The parties were directed to "submit briefing regarding the issue of liability." ROA.4365. River Ventures and XL relied on the MSC, the Travelers policies, and the testimony of marine-insurance expert Jose Guerrero to demonstrate that River Ventures, the M/V

TROOPER, and XL would have been entitled to P&I and Bumbershoot coverage had the prohibited Crew/Employee Exclusion and sole fault exclusion not been included. ROA.4367-ROA.4377; ROA.4389-ROA.4395.

River Ventures and XL cited Jose Guerrero's testimony that naming River Ventures and the M/V TROOPER in the "Specific Additional Insured" endorsement had the same practical effect as listing the vessel on a separate schedule, in that the underwriter thereby "assumed the risk" for the M/V TROOPER just as if it had been listed on a schedule. ROA.6220-ROA.6221. River Ventures and XL also referenced the admission by Centaur's insurance-broker expert, Kenneth Domilise, that Centaur indeed paid an "[a]dditional insureds premium" for the endorsement adding the parties as insureds. ROA.6254-ROA.6255.

River Ventures and XL demonstrated that, if the Travelers P&I Policy did require vessels to be listed on a separate schedule, as Centaur contends, then Centaur failed to procure insurance covering Centaur employee injuries equal in scope to the MSC's contractual indemnity, in accordance with both this Court's directive that these requirements were "designed to mirror" one another, ROA.4372-ROA.4374; ROA.4389-ROA.4394, and the "legal imperative to read the indemnity and insurance procurement provisions harmoniously." *Tullier v. Halliburton Geophysical Servs.*, 81 F.3d 552, 554

(5th Cir. 1996) *citing Ogea v. Loffland Bros. Co.*, 622 F.2d 186, 190 (5th Cir. 1980). For further support, River Ventures and XL cited the admission of Centaur's own expert, Kenneth Domilise, that insurance coverage should be "coextensive" with the parties' contractual indemnity obligations. ROA.6248. River Ventures and XL additionally referenced Mr. Domilise's admission that applying the "named herein" language of the insuring agreement, as Centaur advocates, would result in "no possible coverage" and "[t]here was nothing" under the Travelers P&I Policy for the UBT Group and their vessels, despite all being named as additional insureds and the payment of an additional premium for the naming. ROA.6254. He repeated that "they didn't have any benefit" from the Policy. ROA.6258-ROA.6259.

Notwithstanding Mr. Domilise's admissions and the unambiguous language of the insuring agreement's "named herein" coverage and the "Specific Additional Insured" endorsement, the district court concluded that, although the M/V TROOPER was named on the Travelers P&I Policy as a Specific Additional Insured, it would also need to be listed on a separate schedule in order for River Ventures to receive coverage under the insuring agreement. ROA.4407-ROA.4408, R.E. Tab 3. The district court also determined that, in terms of insurance procurement, the MSC "does not require more" than adding the UBT Group as additional insureds to the

Travelers P&I Policy. ROA.4410, R.E. Tab 3. The district court thus dismissed River Ventures and XL's breach-of-contract claims against Centaur. ROA.4413, R.E. Tab 3; ROA.4414, R.E. Tab 4.

## III.
## RULINGS PRESENTED FOR REVIEW

In its October 23, 2025, Order and Reasons, the district court found that both River Ventures and the M/V TROOPER are Assureds under the Travelers P&I Policy and that River Ventures is the owner of the M/V TROOPER. ROA.4407, R.E. Tab 3. The court nevertheless concluded that the Travelers P&I Policy did not afford coverage to River Ventures or the M/V TROOPER because the policy was intended to provide coverage only for vessels listed on a separate "schedule" of the policy. ROA.4408, R.E. Tab 3.

In reaching that conclusion, the district court found the insuring agreement language providing coverage for liability "as owners of the vessel named herein" did not extend to vessels added to the policy as insureds by a specific endorsement. Instead, the court held that coverage was limited by the policy's preamble, which references a "Schedule of Vessels From OMPI0114." ROA.1988; R.E. Tab 14. Based on that construction, the district court held that no coverage could be afforded to the Additional Insureds under the Travelers P&I Policy, ROA.4408, R.E. Tab 3, even though Centaur paid a premium to Travelers to include River Ventures, the TROOPER, and

other members of UBT Group as insureds. ROA.6255; ROA.1969, R.E. Tab 14.

The district court also rejected River Ventures' and XL's contention that the MSC required Centaur to procure insurance coverage coextensive with its contractual indemnity obligations, concluding that the MSC "does not say as much," even though this Court had previously determined that the insurance-procurement provisions were "designed" to "mirror" the indemnity obligation. ROA.4409, ROA.4410, R.E. Tab 3. The district court did not expressly address the rule of *Tullier* or its predecessor, *Ogea*, that the insurance procurement and indemnity provisions of a contract "must be read in conjunction with each other in order to properly interpret the meaning of the contract." *Tullier*, 81 F.3d at 553-54 (quoting *Ogea*, 622 F.2d at 190. Instead, in a departure from that rule, the district court concluded that "the indemnification provisions are wholly separate from the insurance provisions of the MSA," relying on a distinguishable case involving completely different contract language and a loss that did not even arise out of the ownership of a vessel, *Texas E. Transmission Corp. v. McMoran Offshore Expl. Co.*, 877 F.2d 1214, 1228 (5th Cir. 1989). ROA.4411-ROA.4412, R.E. Tab 3.

## SUMMARY OF ARGUMENT

The district court committed multiple prejudicial legal errors in finding no liability for Centaur's breach of the MSC, contrary to the plain text of the MSC and the Travelers policies, the law, and this Court's prior mandate.

**First,** the district court erred by treating vessel scheduling as the only means for vessel owners to obtain liability coverage for vessels on the SP-23 P&I Policy, effectively nullifying the insuring agreement language extending coverage to insureds "as owners of the vessel named herein," and despite the fact that River Ventures and the M/V TROOPER were expressly named as additional insureds under the "Specific Additional Insured" endorsement. The district court's interpretation deprives both the insuring agreement language extending coverage to insureds "as owners of the vessel named herein" and the "Specific Additional Insured" endorsement of operative effect, violating the maxim that no provision should be interpreted so as to be redundant or meaningless, *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115 (5th Cir. 2010), and failing to recognize that if there is a conflict between an endorsement and the policy terms, "the endorsement prevails." *Zeitoun v. Orleans Parish Sch. Bd.*, 2009-1130, 4 (La. App. 4th Cir. 3/3/10), 33 So. 3d 361, 365, *writ denied*, 2010-0752 (La. 6/4/10), 38 So. 3d 303.

Centaur's argument that the Schedule is the only way to name vessels under the insuring agreement is contradicted by the references to and usage of the Schedule in the Policy. The insuring agreement's selective use of "named herein" language and the separate reference in the Policy to a schedule serve an important purpose of the Travelers P&I Policy--to differentiate between coverage for scheduled vessels and vessels named as insureds by the specific endorsement. For example, Travelers limits its contractual liability coverage to claims "in connection with the operation of an insured vessel **as set out in the schedule**," ROA.2019, R.E. Tab 14 (emphasis added), but it affords liability coverage to additional insureds for all vessels named in the Policy, regardless of whether they are named in the Schedule.

**Second,** if the Travelers P&I Policy required the M/V TROOPER to be separately listed on a vessel schedule to trigger coverage (which River Ventures and XL dispute), Centaur's omission of the M/V TROOPER and other UBT Group vessels from that schedule would be incompatible with the MSC's insurance-procurement scheme and constitute an independent breach of contract. This Court has already determined that the insurance program required in the MSC was designed to mirror the parties' knock-for-knock indemnity obligations. *Barrios*, 121 F.4th at 519; ROA.4353. Further,

this Court's decisions in *Tullier*, 81 F.3d at 553-54, and *Ogea*, 622 F.2d at 190, require the insurance procurement and indemnity provisions to be read "in conjunction with each other." Centaur's expert, Kenneth Domilise, admitted insurance coverage should be "coextensive" with contractual indemnity requirements. Yet, the district court's decision nullifies the effect of the requirement for insurance coverage for the UBT Group on the P&I Policy, resulting in illusory coverage for the additional insureds who receive no benefit under the P&I Policy.

## ARGUMENT

### I. STANDARD OF REVIEW

On remand, after the third appeal, the district court stated:

> "Interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment." Although the parties do not style their briefs on this issue as motions for summary judgment, this Court finds that the summary judgment standard is the most appropriate under which to consider their arguments.

ROA.4404, R.E. Tab 3 (footnote omitted).

This Court reviews *de novo* a district court's grant of summary judgment. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170-71 (5th Cir. 2009). Summary judgment is appropriate only where there is no genuine issue of

material fact and the movant is entitled to judgment as a matter of law. *Id.* at 171.

The interpretation of an insurance policy and of a maritime contract presents a question of law reviewed *de novo*. *Gabarick v. Laurin Mar. (Am.) Inc.*, 650 F.3d 545, 552 (5th Cir. 2011); *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 458 (5th Cir. 1995). Whether a district court complied with this Court's prior mandate is likewise reviewed *de novo*. *United States v. Johnson*, 14 F.4th 342, 347 (5th Cir. 2021). To comply with the mandate, the district court must implement both the letter and the spirit of the mandate. *Id.* The interpretation of a remand order and the application of the law-of-the-case and mandate rules are questions of law subject to *de novo* review. *Deutsche Bank Nat'l Trust Co. v. Burke*, 902 F.3d 548, 551 (5th Cir. 2018).

## II.
## INTRODUCTION

After two trials and three appeals, this case presents the Court with the opportunity to determine whether naming a vessel owner on a P&I policy for liability as owner of "the vessel named" on the policy affords coverage when the vessel is named as an insured on the policy by a Specific Additional Insured endorsement. It also gives the Court the opportunity to explain to the maritime industry that when a party contractually agrees to provide insurance coverage and fails to do so, it is liable for breach of contract. This

Court has already reversed the district court once for interpreting the unambiguous MSC against its clear and explicit language. As the MSC unambiguously required that Centaur afford coverage to River Ventures and XL for the injury claim of Centaur's employee that would have been covered under the Travelers' policies in the absence of the crew/employee exclusion and sole fault exclusion, this Court should reverse the district court.

This appeal presents an issue of great importance to the industry as this Court recognized when it noted that the SP-23 form for P&I insurance "is used as a benchmark for insurance procurement requirements in the marine insurance industry." *Barrios*, 121 F.4th at 518; ROA.4355-ROA.4356, R.E. Tab 5. The Judges of this Court have construed contractual additional insurance requirements for the SP-23 form for decades. Contracts like the MSC in this case rely on additional insurance provisions to allocate responsibility, and, based on the Court's explanation in *Tullier*, 81 F.3d at 553-54, if Centaur obtained the insurance coverage for UBT and its contractors, for which it actually paid a premium to Travelers, then it could have charged UBT for the premium. The district court's interpretation, that naming a vessel on the policy as an additional insured results in no coverage at all on the policy, upends important principles of insurance law and the

expectations of the marine industry for the unambiguous language of the MSC and endorsement naming additional insureds on the P&I Policy.

## III.
## COVERAGE UNDER THE TRAVELERS P&I POLICY

In the third appeal, this Court held that the MSC "unambiguously obligated Centaur to procure a P&I policy that provided coverage for crew/employee personal injuries." *Barrios*, 121 F.4th at 519; ROA.4358, R.E. Tab 5. The threshold question on remand was whether coverage would have existed under the Travelers P&I Policy, but for the prohibited crew/employee exclusion. As shown below, this Court should hold that River Ventures and the M/V TROOPER are covered as insureds for the injury suffered by Barrios (except for the Crew/Employee Exclusion) as they plainly satisfied the insuring agreement of the Travelers P&I Policy.

### A. THE TRAVELERS P&I POLICY'S INSURING AGREEMENT EXTENDS OWNER-LIABILITY COVERAGE TO "THE VESSEL NAMED HEREIN"

It is a foundational principle of marine insurance law that P&I insurance affords coverage for liabilities incurred "as owner of" an insured vessel. *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir. 1971). Consistent with that principle, the insuring agreement of the Travelers P&I Policy provides coverage for liability incurred "as owners of the vessel named herein." ROA.1988, R.E. Tab 14. The coverage grant unambiguously states:

> The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall **as owners of the vessel named herein** have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth . . . .

ROA.1988, R.E. Tab 14 (emphasis added).

### B. THE M/V TROOPER WAS "NAMED" ON THE TRAVELERS P&I POLICY

The MSC required Centaur to "name" members of the UBT Group as additional insureds on its P&I policy. Section 6.0 of the MSC defines the UBT Group as:

> UBT and UBT's other contractors and subcontractors of any tier . . . and any and all vessels owned, chartered, hired, managed or operated by any of the foregoing, and the insurers of each of the foregoing . . . .

ROA.2876, R.E. Tab 13.

The Travelers P&I Policy implements that requirement through a "Specific Additional Insured" endorsement that adds the UBT Group as "an additional insured" on the Policy, fully quoting the MSC's definition of the UBT Group, to name:

> United Bulk Terminals Davant, LLC (UBT) and UBT's other contractors and subcontractors of any tier . . . and any and all vessels owned, chartered, hired, managed or operate [sic] by any of the foregoing and the insurers of each of the foregoing.

ROA.1969, R.E. Tab 14. Accordingly, the district court recognized that it "is undisputed that River Ventures and the M/V TROOPER, are Assureds" under the Travelers P&I Policy. ROA.4407, R.E. Tab 3.

At trial, River Ventures' marine insurance expert, Jose Guerrero, whom the district court accepted as "an expert in marine claims handling, marine claims management, and coverage issues," ROA.6179, explained how the Travelers P&I Policy followed the MSC's insurance requirements to extend coverage to River Ventures and the M/V TROOPER:

> Q. And one of the things you look at to determine whether a vessel is covered under the policy is whether it's scheduled, correct?
>
> A. Of course.
>
> Q. And in this case instead of listing it on a schedule, what the insurance company did and what the contract did was they actually said all vessels owned by River Ventures and UBT Group are covered under this policy, that's what they did, correct?
>
> A. Under the specific additional insured endorsement, River Ventures is covered as a member of the UBT Group and the vessel is covered and the TROOPER is covered because it says that the additional insured includes vessels owned by UBT member.

ROA.6198.

> Q. This policy doesn't say it must be scheduled, the word scheduled, it doesn't say that, does it?
>
> A. No.

> Q. It says named herein, and it goes back to the policies and the reasons for the rule that you talked about earlier, correct?
>
> A. That's correct.
>
> Q. Notify the insurance company that there is a vessel named on this policy and they assumed the risk of this, didn't they?
>
> A. That's correct.

ROA.6221.

Thus, although the M/V TROOPER was not listed on a separate vessel schedule, it was expressly named as an insured vessel through the "Specific Additional Insured" endorsement. Its owner, River Ventures, was likewise named, and XL was named as the insurer of a UBT Group member. River Ventures' liability in the *Barrios* litigation arose solely from its status as owner of the M/V TROOPER.

### C. LOUISIANA RULES OF CONTRACT INTERPRETATION REQUIRE GIVING "NAMED HEREIN" ITS PLAIN MEANING, WHICH INCLUDES VESSELS NAMED BY ENDORSEMENT

In the absence of a specific and controlling federal rule, marine insurance policies are interpreted by reference to applicable state law. *Gabarick*, 650 F.3d at 552. This Court has already established that Louisiana law applies to the interpretation of the Travelers P&I Policy. *Barrios*, 2022 U.S. App. LEXIS 9148 at *6; ROA.3805, R.E. Tab 8 ("In this case, Louisiana law applies.").

This Court set forth principles for construction of the Policy: "Under Louisiana law, '[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *Barrios*, 2022 U.S. App. LEXIS 9148 at *6; ROA.3805, R.E. Tab 8 (citation omitted). "Interpretation of a contract is the determination of the common intent of the parties." *Id.* at *6-*7; ROA.3805, R.E. Tab 8, *quoting* La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* at *7; ROA.3805, R.E. Tab 8, *quoting* La. Civ. Code art. 2046. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." *Id.* ROA.3805, R.E. Tab 8, *quoting* La. Civ. Code art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.*; ROA.3805, R.E. Tab 8, *quoting* La. Civ. Code art. 2050. "'Ambiguous policy provisions are generally construed against the insurer and in favor of coverage,' but 'only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations.'" *Id.*; ROA.3805, R.E. Tab 8, *quoting Cadwallader v. Allstate Ins. Co.*, 2002-1637, 4 (La. 6/27/03), 848 So. 2d 577, 580, *citing* La.

Civ. Code art. 2056 (emphasis in *Cadwallader*). "'An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.'" *Id.*; ROA.3805, R.E. Tab 8, *quoting Cadwallader*, 2002-1637 at 3, 848 So.2d at 580.

Applying those settled rules to the coverage grant in the P&I Policy, the plain meaning of the phrase "vessel named herein" forecloses Centaur's scheduling argument. The M/V TROOPER is expressly identified through the Specific Additional Insured endorsement, which names "any and all vessels owned" by River Ventures, a defined member of the UBT Group. ROA.1969, R.E. Tab 14. That is a direct naming within the four corners of the Policy. Reading "named herein" in the insuring agreement to *exclude* a vessel expressly named by endorsement would not construe the contract, it would rewrite it, converting "named" into "scheduled" and rendering the endorsement, naming vessels as insureds, totally ineffective. Louisiana law prohibits such a construction. *Barrios*, 2022 U.S. App. LEXIS 9148 at *6-*7; ROA.3805, R.E. Tab 8. Where the text is clear and explicit, it must be enforced as written, and any residual doubt must be resolved in favor of coverage. *Id*. The only reasonable construction of the P&I Policy is that River

Ventures is afforded coverage under the P&I Policy for its liability as owner of "a vessel named herein," the M/V TROOPER.

### D. CENTAUR PAID A PREMIUM TO NAME RIVER VENTURES, THE M/V TROOPER, AND XL ON THE TRAVELERS P&I POLICY

The outcome dictated by the rules of construction is reinforced by the undisputed premium evidence. Centaur's insurance expert, Kenneth Domilise, admitted that Centaur paid an additional premium to Travelers to name UBT Group members and their vessels as additional insureds on the Travelers P&I Policy.

> Q. A premium was paid for that additional insured endorsement –
>
> A. Yes.
>
> Q. -- that added River Ventures –
>
> A. Yes.
>
> Q. -- and its vessels and its insurers, correct?
>
> A. Yes.

ROA.6255. The Specific Additional Insured endorsement confirms that a premium was paid to name the additional insureds. ROA.1969, R.E. Tab 14.

Jose Guerrero explained why the additional premium mattered. By naming the M/V TROOPER through the "Specific Additional Insured" endorsement, the underwriter "assumed the risk" associated with that vessel just as if it had been listed on a schedule. ROA.6221.

Under Louisiana law, a "premium" is the consideration paid for "insurance or for the procurement thereof." La. R.S. § 22:855A. Here, the undisputed evidence establishes that Centaur paid an additional premium to name River Ventures, the M/V TROOPER, and XL on the Travelers P&I Policy. ROA.6221. That consideration demonstrates that Travelers evaluated and priced the risk associated with naming River Ventures and its vessel as additional insureds under the Policy. *Id.* It is therefore contrary to the record and the face of the P&I Policy to treat the "Specific Additional Insured" endorsement as a purely formal designation without coverage effect.

### E. THE DISTRICT COURT ERRED IN ACCEPTING CENTAUR'S SCHEDULING THEORY

Centaur contends, and the district court accepted, that because the P&I Policy's introductory recital references a "Schedule of Vessels From OMPI0114," coverage is categorically unavailable to River Ventures or the M/V TROOPER unless the vessel is listed on that separate schedule, notwithstanding that the TROOPER was expressly named as an insured through the "Specific Additional Insured" endorsement. ROA.4406-ROA.4408, R.E. Tab 3. The dispute therefore turns on the actual phrasing and structure of the Policy's insuring agreement and the prior paragraph (ROA.1988, R.E. Tab 14):

CENTAUR LLC

hereinafter called the Assured.

Loss, if any, payable to **Assured** or order.

In the sum of **$1,000,000** Dollars

at and from the **1st** day of **January**, **2016**, at **12:01** time

until the **1st** day of **January**, **2017**, at **12:01** time

against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth, In respect of the vessel called the **As per Schedule of Vessels From OMPI0114**

(Tonnage ) or by whatsoever other names the said vessel is or shall be named or called.

In consideration of the Stipulations Herein Named and of [redacted] Dollars, being Premium at the rate of [redacted]

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

The unambiguous language of the Travelers P&I Policy extends coverage for liability incurred "as owners of the vessel **named herein**." ROA.1988, R.E. Tab 14 (emphasis added). The Policy nowhere states that "only" vessels enumerated the Schedule are named in the Policy to the exclusion of vessels that are named in a separate endorsement or that scheduling is the exclusive means by which a vessel may be "named" for purposes of coverage. To the contrary, the policy includes a "Specific Additional Insured" endorsement that expressly adds as insureds the vessels owed by River Ventures. ROA.1969, R.E. Tab 14.

### 1. The "Specific Additional Insured" Endorsement Should Be Given Operative Effect

It is a settled principle of insurance law that endorsements form part of the policy and control over inconsistent or general provisions. *Zeitoun v. Orleans Parish Sch. Bd.,* 2009-1130, 4 (La. App. 4th Cir. 3/3/10), 33 So. 3d 361, 365 *writ denied*, 2010-0752 (La. 6/4/10), 38 So. 3d 303 ("If a conflict

between the endorsement and the policy exists, the endorsement prevails."). *See also Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115 (5th Cir. 2010) ("'Endorsements to a policy generally supersede and control over conflicting printed terms within the main policy;' however, the provisions found in the main 'policy and endorsement should be construed together unless' doing so would negate or render superfluous the additional coverage afforded in the endorsement . . . .") (citation omitted). The district court in the present case effectively reversed that hierarchy by treating vessel scheduling as exclusive and dispositive, while disregarding the express addition of vessels through the endorsement.

**2. Centaur's Argument and the District Court's Decision Fail to Consider All Provisions of the Policy**

Centaur's argument that owners are insured only for scheduled vessels fails to consider all of the provisions of the Policy and reflects a misunderstanding of the role of vessel naming and vessel scheduling within the Travelers P&I Policy. On the Travelers P&I Policy, scheduling alone does not define which vessels are insured for owner-liability coverage, which extends to all vessels "named herein." Travelers named vessels in two ways, by listing them on the schedule and by naming them with specific endorsements. Travelers knew how to limit P&I coverage to scheduled

vessels as demonstrated in the specific endorsement governing contractual liability:

> CONTRACTUAL LIABILITY
>
> This insurance is to cover any liability of an Assured in connection with the operation **of an insured vessel as set out in the schedule arising** solely by reasons of the terms of a customary contract, written or oral (other than a contract of towage by the insured vessel) for:
>
> 1. Death or personal injury . . . .

ROA.2019-ROA.2020, R.E. Tab 14.

The Policy's contractual liability provision restricts coverage to liabilities assumed "in connection with the operation of an **insured vessel as set out in the Schedule**." ROA.2019, R.E. Tab 14 (emphasis added). The limiting language would be unnecessary if scheduling already defined the only vessels covered under the policy. It does not. The contractual liability coverage does not extend to all insured vessels—only insured vessels that are set out in the schedule.

The distinction between the named and scheduled vessels is necessary for an important reason that was illustrated by this Court's decision in *Int'l Offshore Servs., L.L.C. v. Linear Controls Operating, Inc.*, 647 F. App'x 327 (5th Cir. 2016). That case involved a contract between Linear Controls, employer of an injured worker, and Apache that required Linear Controls to name Apache as an additional insured on Linear Controls' liability policy.

Apache was named as an additional insured on Linear Controls' policy, and Apache was thereby insured for its tort liability. However, Apache had agreed to indemnify International Marine, the owner of the boat on which the worker was injured, and Apache argued that it was entitled to insurance coverage from Linear Controls' insurer for Apache's contractual liability obligation to the vessel owner. This Court declined to extend the insurance coverage on Linear Controls' policy for Apache's contractual liability because Linear Controls' policy *limited its contractual liability coverage to the named insured*, not additional insureds. *Id.* at 329-30.

In the present case, Travelers similarly confined the coverage for contractual liability in the P&I Policy, in this instance to specific insureds operating "an insured vessel as set out in the schedule," as distinguished from additional insureds operating vessels "named herein" via the Specific Additional Insured endorsement. The Travelers P&I Policy covers River Ventures for its tort liability to Barrios, as owner of the named vessel TROOPER, but the Policy does not cover any contractual liability of River Ventures to a third-party because its vessel was not scheduled. That distinction ensures that the Policy and MSC work together to implement the MSC's allocation of fault. Centaur agreed to insure River Ventures for its liability for injuries to Centaur's employees. It did not agree to insure River

Ventures' contractual undertakings to others that might upset the MSC's allocation of responsibility.

Insurers know how to limit coverage *solely* to vessels appearing on a schedule. For example, in *Lanasse*, the insuring agreement of the P&I policy provided:

> In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured and in conformity with lines 5 and 6 hereof, such sums as the assured, *as owner of the Vessels* **as per Schedule** shall have become legally liable to pay and shall have paid . . . .

*Lanasse*, 450 F.2d at 584 n.7 (italics added by the Court; bold emphasis added herein). The language used in the insuring agreement in *Lanasse*, limiting the insuring agreement to vessels in the schedule, is not part of the "P&I SP-23 (Revised 1/56) form of policy" required by the MSC, which affords coverage for liability of Assureds "as owners of the vessel named herein." *See* ROA.2791.

In the present case, Travelers did not add the limiting language in the insuring clause that was used in *Lanasse*, which would have restricted coverage in the insuring agreement to the vessels in the schedule, contrary to the requirement in the MSC to name vessels owned by River Ventures,

which was accomplished by the endorsement.[5] Instead, Travelers issued the P&I Policy with the insuring agreement from the SP-23 (Revised 1/56) form, extending coverage to owners of vessels "named herein" (not "Vessels as per Schedule"). The Policy then affirmatively named an entire class of vessels ("any and all vessels owned" by UBT Group members) through the "Specific Additional Insured" endorsement. ROA.1969, R.E. Tab 14. Travelers did limit its coverage to vessels named in the schedule in situations that would extend coverage beyond what was required in the MSC, such as the contractual liability coverage in the Policy, demonstrating the intent to provide coverage to River Ventures for its tort liability in connection with the vessels named in the Specific Additional Insured endorsement but not any contractual liability that River Ventures may have undertaken.

#### 3. Cases Cited by Centaur and the District Court Are Inapposite to the Interpretation of the MSC

The structure of the Travelers P&I Policy also exposes the flaw in the district court's reliance on *Texas E. Transmission Corp. v. McMoran Offshore Expl. Co.*, 877 F.2d 1214 (5th Cir. 1989), for the proposition that Centaur was not required to provide P&I coverage to the same extent as its

[5] Indeed, the Travelers' P&I Policy in this case directly quotes the MSC's precise definition of UBT Group indemnitees in the "Specific Additional Insured" endorsement. ROA.1969, R.E. Tab 14; ROA.2876, R.E. Tab 13; ROA.6251-ROA.6252. The same definition is again quoted verbatim in the Travelers' P&I Policy's Designated Entity Notice of Cancellation/Non-Renewal – Amendment. ROA.1984.

indemnity obligation. ROA.4411-ROA.4412, R.E. Tab 3. The district court noted the *Texas Eastern* Court's basic observation that parties may be bound by a "bad bargain," but *Texas Eastern's* holding does not support the district court's conclusion. *Texas Eastern* held that a contractor did not breach a contract by failing to procure P&I insurance covering liabilities that P&I insurance does not, by its very nature, insure (namely, non-shipowner negligence unrelated to vessel ownership). The Court in *Texas Eastern* stated the question: "does Article X of the Blanket Towing Agreement oblige Faustug to insure McMoRan for Damages resulting from the negligent retrieval of anchors by a non-ship-owner? We hold that it does not." *Id.* at 1227. The *Texas Eastern* Court emphasized that P&I insurance "insures only against liability resulting from vessel ownership" and refused to rewrite either the policy or the contract to cover risks outside that traditional scope. *Id.*

This case presents the opposite scenario. River Ventures was sued and held liable solely in its capacity as vessel owner; the MSC expressly required Centaur to name UBT Group members and their vessels as insureds; and the Travelers P&I Policy did exactly that through a "Specific Additional Insured" endorsement naming "any and all vessels owned" by those parties. Reading *Texas Eastern* to justify denying coverage here would invert its holding,

using a case that refused to expand P&I coverage beyond vessel-ownership liability to instead deny coverage for vessel-ownership liability expressly contemplated by both the MSC and the P&I Policy.

The district court's reliance on a preamble reference to a "Schedule of Vessels" to override the insuring agreement and the "Specific Additional Insured" endorsement was error. The insuring agreement is the operative grant of coverage, and the endorsement is a negotiated modification expanding insured status, specifically *naming* River Ventures *and* its owned vessels. The district court's interpretation, allowing the general language on vessels listed in the schedule to overturn the specific endorsement naming River Ventures' vessels as insureds, is not only unreasonable and violative of the fundamental principles requiring the court to give effect to all contract provisions and that endorsements generally supersede conflicting printed terms, but it results in the absurd conclusion that the insurer can charge a premium to add an additional insured endorsement that affords no coverage to the additional insureds. The narrow holding necessary to reverse the district court is only that a P&I insurer cannot use "named herein" language

in its insuring agreement while naming a vessel as an additional insured without covering losses due to the ownership of the named vessel.[6]

#### 4. The District Court's Decision Renders Coverage Illusory for the Additional Insureds

The district court's construction renders the P&I Policy illusory or meaningless to all additional insureds, in this case, the entire UBT Group, in violation of the rule against policy interpretations that produce absurd results. *Mid-Continent*, 614 F.3d at 115. Centaur's expert, Kenneth Domilise, admitted that, under the construction of the Travelers P&I Policy adopted by the district court, UBT or UBT Group members had no possibility of coverage because no vessels were formally listed on the schedule as opposed to the specific endorsement:

> Q. You've indicated earlier, in fact, that adding River Ventures, adding the vessels, adding their insurers as additional insureds under this policy does nothing for them, do you remember saying that?
>
> A. Yes.

ROA.6257.

> Q. Sir, you said that it has to be a scheduled vessel. River Ventures, according to you, River Ventures and UBT

---

[6] Centaur's rigid "schedule-only" construction is further undermined by the policy's automatic attachment clause, which provides for the P&I coverage to "automatically attach to each vessel acquired, purchased by, chartered to, leased to, rented by, delivered off charter to, under control of, used by, or operated in whatever capacity by the Assured." ROA.1982. That language contemplates P&I coverage can be extended to vessels that are named other than in the Schedule.

had no scheduled vessels so they had no possible benefit from that policy. Am I correct about that?

A. Contract said that. I mean, yes, they didn't have any benefit.

ROA.6258-ROA.6259.

Courts must construe policies to give effect to all provisions and avoid interpretations that render coverage illusory, meaningless, or absurd. See *Petrozziello v. Thermadyne Holdings Corp.*, 2015-1525, 5 (La. App. 1st Cir. 2/17/17), 211 So. 3d 1199, 1202, *writ denied*, 2017-0473, (La. 5/12/17) 219 So. 3d 1104; *Rider v. Ambeau*, 2011-0532, 7 (La. App. 1st Cir. 2/1/12), 100 So. 3d 849, 854-55 (La. App. 1 Cir. 2012); *Boullt v. State Farm Mut. Auto. Ins. Co.*, 99-0942, 10 (La. 10/19/99), 752 So. 2d 739, 744.

The court in *Rider* reasoned: "We find that it is absurd for a *liability* policy, such as the POP-EPL policy at issue, to *exclude all coverage* for the insured's liability to a claimant." *Rider*, 2011-0532 at 12, 100 So. 3d at 857 (emphasis in original). The court in *Boullt* added: "By allowing State Farm to collect separate premiums from each of the Boullts on their individual policy covering different risks and then deny recovery to the insureds under the policies would be tantamount to State Farm issuing illusory coverage to the parties . . . ." *Boullt*, 99-0942, at 10, 752 So. 2d at 744 (footnote omitted).

The Travelers P&I Policy expressly names River Ventures and its vessels through the "Specific Additional Insured" endorsement, and the

insuring agreement extends coverage to River Ventures for its liability as owner of "the vessel named herein." ROA.1988, R.E. Tab 14. Under the district court's construction, however, those named as additional insureds would receive no owner-liability coverage because their vessels were not separately listed on a schedule, even though a premium was paid to add the vessels to the coverage of the Policy, an absurd result.[7]

In sum, Centaur's scheduling theory cannot be reconciled with the text and structure of the P&I Policy. The insuring agreement grants owner-liability coverage for vessels "named herein." The Specific Additional Insured endorsement is a Policy mechanism by which vessels and owners are affirmatively named as insureds. The schedule is also a mechanism to name vessels for coverage, including specific coverages, such as when the policy uses scheduling to confer contractual liability coverage to specified insureds and vessels. ROA.1988; ROA.1969; ROA.2019, R.E. Tab 14. However, the schedule is not the only way to add vessels to the coverage as demonstrated by the specific endorsement that was added to comply with the MSC.

[7] *See also Armijo v. Tetra Techs., Inc.*, 936 F. Supp. 2d 675, 687 n.7 (E.D. La. 2013) *appeal dismissed sub nom. Tetra Techs. Inc. v. Cont'l Ins. Co.*, 755 F.3d 222 (5th Cir. 2014) (applying Texas law), *citing St. Paul Ins. Co. v. Texas Dept. of Transp.*, 999 S.W.2d 881, 886-87 (Tex. Ct. App. 1999) ("St. Paul collected a premium for coverage of additional insureds but would interpret its professional services exclusion to exclude all such coverage. St. Paul's interpretation would render the policy meaningless to all additional insureds—in this case, all persons required to be named by Abrams as 'additional protected persons.'").

## IV.

## ALTERNATIVELY, CENTAUR BREACHED ITS OBLIGATION TO PROCURE A P&I POLICY THAT COMPLIED WITH THE MSC'S INSURANCE SPECIFICATIONS

Even if this Court were to conclude that the Travelers P&I Policy, as issued, could not afford coverage to River Ventures and XL, Centaur nevertheless breached the MSC by failing to procure P&I insurance coverage that satisfied the MSC's express insurance-procurement requirements.

### A. The MSC Required SP-23–Equivalent P&I Coverage and the Naming of the Entire UBT Group, including "Any and All Vessels Owned" by its Members

Section 5.0 of the MSC required Centaur to procure a Protection & Indemnity policy "of not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent" and to name "each of the UBT Group as additional insureds." ROA.2875, R.E. Tab 13. The MSC defines the UBT Group in Section 6.0 to include: "UBT and UBT's other contractors and subcontractors of any tier . . . and any and all vessels owned, chartered, hired, managed or operated by any of the foregoing, and the insurers of each of the foregoing . . . ." ROA.2876, R.E. Tab 13.

This Court has already held that "the language of the MSC is clear, explicit, and leads to no absurd consequences." *Barrios*, 121 F.4th at 519; ROA.4358, R.E. Tab 5. This Court further held that the "MSC therefore unambiguously obligated Centaur to procure a P&I policy that provided

coverage for crew/employee personal injuries." *Id.*; ROA.4358, Tab 5. Yet, the district court held that Centaur could satisfy its obligation by providing a P&I policy that afforded no coverage at all to UBT and River Ventures.

Centaur contended, and the district court accepted, that coverage under the Travelers P&I Policy could exist only if a vessel was formally listed on a schedule. If that premise were correct, Centaur necessarily failed to procure a policy that complied with its obligation under Section 5.0. The MSC required coverage for the UBT Group, including "any and all vessels owned" by its members. If the Travelers P&I Policy's coverage could attach only to vessels separately scheduled, and no such scheduling occurred, then this would categorically defeat coverage for the entire UBT Group. Thus, Centaur breached its contractual obligation to provide insurance coverage for the UBT Group for failing to name *each* of the UBT Group as insureds "to the extent of the liabilities assumed by Centaur," which includes responsibility for injuries to Centaur employees.

### B. Centaur was Required to Procure a P&I Insurance Policy with Coverage that Would "Mirror" the Scope of the Contractual Indemnity Requirements

As this Court has already recognized, the MSC "imposed several insurance procurement obligations on Centaur in connection with the dock project, which were designed to mirror the MSC's requirement that Centaur

indemnify River Ventures/XL for all claims brought for personal injury of a Centaur employee regardless of cause or fault." *Barrios*, 121 F.4th at 518, ROA.4353, R.E. Tab 5 (footnote omitted). Although the contractual indemnity obligation was ultimately rendered unenforceable by 33 U.S.C. § 905(b), this Court noted that, at the time of insurance procurement, "one cannot assume that contractual indemnity will be voided." *Id.* at 518,[8] ROA.4354 n.2, R.E. Tab 5.[9] The question, therefore, is not whether indemnity was later nullified by statute, but whether Centaur fulfilled its contractual duty to procure insurance responsive to the very employee-injury and vessel ownership risks the MSC required it to assume.

Section 6.0 of the MSC required Centaur to "release, defend, indemnify, and hold UBT Group . . . harmless from and against any and all claims . . . in respect of personal or bodily injury . . . of . . . any member of the Contractor [Centaur] Group . . . *regardless of cause or fault*, and even if caused in whole or in part by the sole, joint, or concurrent negligence or fault of any member of the UBT Group . . . ." ROA.2876, R.E. Tab 13 (emphasis in original). The UBT Group expressly includes River Ventures and its owned

[8] This quote was mistakenly located in the text of the opinion in the LEXIS version but appears as Footnote 2 in the opinion issued by this Court.

[9] The obligation to insure the UBT Group to the extent of Centaur's indemnity obligations is not affected by the invalidity of the indemnity. *See LeBlanc v. Global Drilling Co.*, 193 F.3d 873, 875 (5th Cir. 1999).

vessels, including the M/V TROOPER. ROA.2876, R.E. Tab 13). Critically, nothing in this provision conditions indemnity on vessel ownership, operation, or scheduling; instead, indemnity is triggered by employee injury alone. This Court summarized in *LeBlanc*, 193 F.3d at 875: "The language of indemnification defines the parameters of the agreement regarding assured status."

Centaur's insurance expert, Kenneth Domilise, confirmed that the insurance placed to satisfy the MSC should correspond to the knock-for-knock allocation of risk and avoid gaps in coverage, as this Court described when it stated that the insurance obligations mirror the allocation that Centaur, not the UBT Group, would bear the economic consequences of injury claims by Centaur's employees.

> Q. But you also don't want to have gaps in coverage, right?
>
> A. Yes.
>
> Q. And, in fact, you personally would never place a package where you thought that there was a gap in coverage, correct?
>
> A. Yes.
>
> Q. In addition to that, when you're placing that package policy, you want to insure that the insurance coverage is coextensive with the obligations to contractually indemnify the counterparty under that contract, correct?
>
> A. Yes.
>
> Q. Is that right?

A. Yes.

Q. Do you agree with that?

A. Yeah.

ROA.6247-ROA.6248.

Q. All right. Now, let's talk about the contractual indemnity provision that you said has to be taken into account. You've reviewed this provision before, correct, paragraph 6.0?

A. Yes.

Q. And that requires Centaur to contractually indemnify and defend UBT and the UBT Group members from claims asserted by its employees for personal injuries, correct?

A. Yes.

ROA.6251.

As previously noted, this Court has imposed a "legal imperative to read the indemnity and insurance procurement provisions harmoniously." *Tullier*, 81 F.3d at 554 (*citing Ogea*, 622 F.2d at 190). That directive requires courts to enforce the contract as an integrated whole, such that insurance specifications are not construed in a manner that would nullify coverage for the defined class of insureds that the same contract expressly protects through contractual indemnity. Harmonization of the indemnity provision, which defines the parameters of the additional insured status, as stated in *LeBlanc*, with the required insurance, would prevent precisely the type of gap

in P&I coverage in Centaur's insurance program that Mr. Domilise stressed must be avoided. ROA.6247.

In essence, this Court held that the MSC "unambiguously obligated Centaur to procure a P&I policy that provided coverage for crew/employee injuries." *Barrios*, 121 F.4th at 519; ROA.4358, R.E. Tab 5. If Centaur failed to comply with that obligation by obtaining a policy that afforded no coverage, then it breached the MSC.

### C. The Breach Directly Caused the Loss

Where a party breaches a contractual obligation to procure insurance for another, this Court has directed that the breaching party is liable for the amount the required insurance would have paid, together with associated defense costs. *Voisin v. O.D.E.C.O. Drilling Co.*, 744 F.2d 1174, 1179 (5th Cir. 1984); *Stewart v. Cran-Vela Rental Co.*, 510 F.2d 982, 985-86 (5th Cir. 1975).

The MSC obligated Centaur to procure an SP-23–equivalent P&I policy and a follow-form excess policy naming the UBT Group and their vessels, and this Court has already held that Centaur breached its procurement obligations by procuring a P&I policy that impermissibly eliminated crew/employee coverage. *Barrios*, 121 F.4th at 519; ROA.4358, R.E. Tab 5. Centaur also breached its procurement obligation in the Bumbershoot Policy

because that Policy impermissibly contained a "sole fault" exclusion. Had Centaur obtained the compliant policies that the MSC required, i.e., P&I coverage that actually responded to Centaur-employee injury claims and a follow-form excess layer free of the prohibited sole-fault restriction, the loss would have been covered by Travelers' policies. Instead, Centaur's procurement failures produced the very coverage gap the MSC was designed to prevent.

The district court suggested that River Ventures could have avoided the loss by negotiating different policy terms if it was "not satisfied" with the Travelers P&I Policy, ROA.4412, R.E. Tab 3. This Court already recognized that River Ventures and XL's rights arise as intended third-party beneficiaries. *Barrios*, 121 F. 4th at 517 n.1; ROA.4353, R.E. Tab. 5. A third-party beneficiary's vested contractual rights are not forfeited by silence or inaction of the contracting parties. La. Civ. Code. arts. 1978 and 1979. *See also New Orleans Opera Ass'n, Inc. v. S. Regional Opera Endowment Fund*, 2007-1373 (La. App. 4th Cir. 8/27/08), 993 So. 2d 791, 798, *writ denied*, 2008-2352 (La. 11/21/08), 996 So.2d 1114.

For the same reason, *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299 (5th Cir. 1984), does not support the district court's conclusion. *Landry* involved a direct contracting party seeking relief from the consequences of

its own bargain; it did not address the rights of a third-party beneficiary whose rights were vested, as with River Ventures. Extending *Landry* to allow a waiver of the rights of a third-party beneficiary (River Ventures) to coverage due to actions of the contracting party (UBT) conflicts with Louisiana Civil Code articles 1978 and 1979, and it is contrary to *Voisin* and *Stewart*, which allowed contracting parties to recover for breach of contract when they were not named or subject of a waiver of subrogation in insurance policies. *Voisin*, 744 F.2d at 1179; *Stewart*, 510 F.2d at 985-86.

This Court reversed the district court in the third appeal because the MSC "unambiguously obligated Centaur to provide a P&I policy that provided coverage for crew/employee personal injuries." *Barrios*, 121 F.4th at 519, ROA.4358, R.E. Tab 5. The P&I and Bumbershoot policies were required to name River Ventures and its vessel TROOPER as insureds under the policies. As in the third appeal, the failure of the district court to hold that Centaur's failure was a breach of contract must be reversed.

Under *Voisin* and *Stewart*, Centaur is therefore liable for the insurance proceeds and defense costs that proper procurement would have provided—the cost of defending River Ventures and settling the judgment against it.

## V.

## COVERAGE UNDER THE P&I POLICY ESTABLISHES COVERAGE UNDER THE BUMBERSHOOT POLICY

In the last appeal, this Court declined to address the question whether Centaur breached its obligation to procure excess insurance for the additional insureds that "shall not exclude from coverage the sole negligence of the Additional Insureds." *Barrios*, 121 F.4th at 520; ROA.4358, R.E. Tab 5. On remand, the district court did not reach that issue, holding that there was no coverage under the Bumbershoot Policy because it applies "in excess of similar coverage provided in a Policy," and the district court found no coverage in the underlying P&I policy. ROA.4408 n.27, R.E. Tab 3. If Centaur had not breached its contractual obligation to procure P&I insurance for River Ventures and XL that covers River Ventures' liability to Barrios, there would have been coverage on the Bumbershoot Policy absent the contractually prohibited exclusion for "liabilities arising out of the sole fault or sole negligence of the Additional Insured." ROA.2126. Accordingly, this Court should reverse the judgment that Centaur did not breach its contractual obligation to provide coverage on the Bumbershoot Policy. The district court should be directed, on remand, to award damages to River Ventures and XL for Centaur's breach of its obligations to procure both P&I and Bumbershoot coverage.

## CONCLUSION

Centaur agreed to provide insurance coverage to River Ventures, the TROOPER, and XL for injuries to Centaur's employees. It breached that obligation. Accordingly, River Ventures and XL respectfully pray that this Court reverse the district court's October 23, 2025, Order and Reasons and its October 24, 2025, Judgment, and remand for a determination of the amounts due to the additional insureds, River Ventures, L.L.C., and XL Specialty Insurance Company, for Centaur's failure to procure coverage.

Respectfully submitted,

/s/ Kenneth G. Engerrand
Kenneth G. Engerrand
TBN No. 06619500
Lead Attorney
BROWN SIMS, P.C.
1990 Post Oak Blvd., Suite 1800
Houston, TX 77056
Telephone: 713.629.1580
kengerrand@brownsims.com

Thear J. Lemoine
LBN No. 26383
Taylor R. Lambert
LBN No. 36540
Jackson O. Scott
LBN No. 40941
BROWN SIMS, P.C.
365 Canal Street, Suite 2900
New Orleans, Louisiana 70130
Telephone: 504.569.1007
tlemoine@brownsims.com
tlambert@brownsims.com
jscott@brownsims.com

*ATTORNEYS FOR INTERVENOR PLAINTIFF-APPELLANT, XL SPECIALTY INSURANCE COMPANY*

/s/ Jefferson R. Tillery
Jefferson R. Tillery
Lead Attorney
LBN No. 17831
JONES WALKER, L.L.P.
201 Saint Charles Avenue
Suite 4700
New Orleans, Louisiana 70170
Telephone: 504.582.8616
jtillery@joneswalker.com

Justin J. Marocco
LBN No. 35226
JONES WALKER, L.L.P.
445 North Boulevard
Suite 800
Baton Rouge, Louisiana 70802
Telephone: 225.248.2415
jmarocco@joneswalker.com

*ATTORNEYS FOR DEFENDANT-APPELLANT RIVER VENTURES, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, I electronically filed the above and foregoing pleading with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

/s/ Kenneth G. Engerrand
Kenneth G. Engerrand

*LEAD ATTORNEY FOR INTERVENOR PLAINTIFF-APPELLANT, XL SPECIALTY INSURANCE COMPANY*

/s/ Jefferson R. Tillery
Jefferson R. Tillery

*LEAD ATTORNEY FOR DEFENDANT-APPELLANT RIVER VENTURES, L.L.C.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this Brief contains 10,804 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Georgia font with footnotes in 12-point Georgia font.

Pursuant to Fifth Circuit Rule 32.3, the undersigned understands that a material misrepresentation of this Certificate of Compliance may result in striking the Brief and in sanctions against the person signing the Brief.

/s/ Kenneth G. Engerrand
Kenneth G. Engerrand

*ATTORNEY FOR INTERVENOR PLAINTIFF-APPELLANT, XL SPECIALTY INSURANCE COMPANY*

/s/ Jefferson R. Tillery
Jefferson R. Tillery

*ATTORNEY FOR DEFENDANT-APPELLANT RIVER VENTURES, L.L.C.*